UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

YUK CHUN KWONG                                                    PETITIONER

VERSUS                                    CIVIL ACTION NO. 5:25-CV-152-DCB-RPM

RAFAEL VERGARA                                                   RESPONDENT

### REPORT AND RECOMMENDATIONS

Before the Court is Petitioner Yuk Chun Kwong's [1] Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  At the time the petition was filed on December 11, 2025, Petitioner was an immigration detainee housed at the Adams County Correctional Center in Natchez, Mississippi.  According to the petition, he is a native and citizen of Hong Kong who arrived in the United States in 1977.[1]  [1] at 3.  Several years ago, he was detained by United States Immigration and Customs Enforcement ("ICE") because he was subject to a removal order; after six months in detention, he was released subject to an order of supervision.  [15-1]; [15-3].  He was then re-detained by ICE on March 12, 2025.  [1] at 7.  According to ICE's Online Detainee Locator System, he remains detained at the Adams County Correctional Center.[2]

Here, Petitioner challenges his continued detention and seeks to be released under appropriate conditions of supervision.  *Id.* at 14.  Having considered the parties' submissions, the circumstances of this particular case, and *Zadvydas v. Davis*, 533 U.S. 678 (2001) and its progeny,

---

[1] Petitioner was born in Hong Kong in 1964.  [1] at 3.  At that time, "Hong Kong was a British colony."  *Chan v. Mayorkas*, No. 24-CV-1315-JLS (MSB), 2024 WL 5159900, at *1 (S.D. Cal. Dec. 18, 2024).  However, "British sovereignty over Hong Kong cease[d] on July 1, 1997, when Hong Kong bec[ame] a special administrative region of the People's Republic of China."  *Matimak Trading Co. v. Khalily*, 118 F.3d 76, 79 (2d Cr. 1997); *see* 22 U.S.C. § 5701.
[2] The Court's search involved inputting Petitioner's "A-Number" and "Country of Birth."

the undersigned recommends that the Court grant the petition and order that Petitioner be removed or released from ICE custody within 30 days of the Court's order granting the petition.

## I.  Background

In 1977, Petitioner—a native and citizen of Hong Kong—was admitted in the United States as a lawful permanent resident.  In 1995, he was convicted in federal court by guilty plea for racketeering conspiracy and conspiracy to possess with intent to distribute heroin in excess of one kilogram; he was sentenced to 30-years' imprisonment.  *See Yuk Chun Kwong v. United States*, No. 01-CV-4307 (SLT), 2006 WL 467956, at *1 (E.D.N.Y. Feb. 27, 2006) (noting that Petitioner "was convicted . . . of racketeering conspiracy and conspiracy to distribute heroin, and was sentenced to two concurrent terms of 360 months").  He then served approximately 26 years in federal custody and completed his sentence.

In the meantime, an Immigration Judge ordered Petitioner removed from the United States on April 21, 2010.  [15-1].  The removal order became administratively final on that date.  After completing his criminal sentence, Petitioner was placed in ICE custody for removal proceedings. After approximately six months in detention, however, ICE released Petitioner subject to an order of supervision due to "issues with Hong Kong accepting him based on the identifying information."  [7] at 2; [15-3].  According to Petitioner, ICE was "unable to deport him as proper identification could not be verified" and "Hong Kong refused to accept" him.  [1] at 5.  Thereafter, it is undisputed that Petitioner complied with the order of supervision for approximately four years until he was re-detained by ICE on March 12, 2025.  Since that time, ICE has continued its attempts to effectuate Petitioner's removal to Hong Kong.  [7-1]; [12-1]; [14-1].

In the instant petition, Petitioner asserts the following: (1) his detention exceeds the presumptively reasonable period; (2) there is no significant likelihood of removal; (3) his re-

detention without changed circumstances violates due process; (4) ICE violated the Administrative Procedure Act in failing to adhere to its own regulations, i.e., 8 C.F.R. § 241.4; (5) he is not and cannot constitutionally be subjected to mandatory detention; and (6) his long record of supervised-release compliance demonstrates release is appropriate. [1] at 9–13. Respondent Rafael Vergara, the Warden of Adams County Correctional Center, filed a response opposing the petition. [7].

Upon reviewing the pleadings in this matter, the Court entered an Order requiring Respondent to file a response showing good cause, if any, why this Court should not order Petitioner's release. [11]. Specifically, the Court observed that Petitioner had been in detention for more than a year and, like his previous detention, had not been removed yet. Therefore, it appeared at the time "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Respondent filed a response on April 13, 2026, stating that Enforcement and Removal Operations ("ERO") believed it would receive Petitioner's nationality verification from Hong Kong within the next two months. [12] at 2. After two months, the Court held a telephonic status conference on June 30, 2026, and provided the parties an opportunity to expound on their respective positions. Minute Entry (06/30/2026). Additionally, Respondent provided a status update on the efforts to remove Petitioner. At that time, ERO had not received Petitioner's nationality verification and was still working on obtaining Petitioner's travel documents. [14-1]. Petitioner remains in detention at the Adams County Correctional Center.

## II. Law & Analysis

"[W]hen a final order of removal has been entered against an alien, the government must facilitate that alien's removal from the United States within ninety days, a period generally referred to as the removal period." *Tran v. Mukasey*, 515 F.3d 478, 481 (5th Cir. 2008) (citing 8 U.S.C. § 1231(a)(1)(A)). However, the government may detain an alien beyond this removal period if

detention is authorized under 8 U.S.C. 1231(a)(6). *Id.* at 481–82. That particular statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. "It does not permit indefinite detention." *Id.* And "where detention's goal is no longer practically attainable, detention no longer 'bear[s] [a] reasonable relation to the purpose for which the individual [was] committed.'" *Id.* at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

Thus, the Supreme Court held in *Zadvydas* that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id.* at 699. The Supreme Court concluded that "six months was a presumptively reasonable period of detention, beyond the removal period, in which to effectuate deportation." *Tran*, 515 F.3d at 482 (citing *Zadvydas*, 533 U.S. at 702). After this six-month period, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (quoting *Zadvydas*, 533 U.S. at 701). And "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

As an initial matter, Respondent does not appear to dispute the assertion that Petitioner's detention exceeds the presumptively reasonable period. [7] at 3. Petitioner's removal order became administratively final on April 21, 2010. [15-1]. His current detention period began on March 12, 2025. At this time, he has been detained for approximately 16 months. Therefore, he has been detained well beyond the presumptively reasonable six-month period of detention, beyond the 90-day removal period, to effectuate removal. *Tran*, 515 F.3d at 482 (citing *Zadvydas*,

533 U.S. at 702).

The Court further notes that this is not Petitioner's first time being detained in an attempt to effectuate his removal.  Petitioner was re-detained after his release from a previous six-month period of detention.  The previous six-month period of detention resulted in his release in 2021 because ICE was "unable to deport him as proper identification could not be verified" and "Hong Kong refused to accept" him.  [1] at 5.  At least one court has held that "re-detention after [a petitioner's] release without a bond hearing violates [that petitioner's] due process rights."  *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 713 (W.D. Tex. 2025).  It is unclear why Petitioner was re-detained, but it is clear it was not because there was a significant likelihood he would be removed in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(i)(2).

As for Petitioner's *Zadvydas* claim and whether his previous detention should be considered here, "numerous courts . . . have rejected a 'cumulative' or 'aggregate' calculation of the detention period for purposes of the *Zadvydas* limitation and instead conclude that the clock 'restarts' when the alien again is detained."  *Le v. Warden*, No. 4:26-CV-3040, 2026 WL 809308, at *7 (D. Neb. Mar. 24, 2026) (collecting cases).  One of those courts observed that "adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals."  *Barrios v. Ripa*, No. 1:25-CV-22644-GAYLES, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025); *see Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *4 (M.D. Fla. Mar. 20, 2026) ("If every prior day spent in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely.").  On the other hand, other courts have held that "re-start[ing] the six-month presumptively constitutional detention clock by simply releasing and then re-

detaining a noncitizen has no basis in either the statutes, the regulations, or *Zadvydas* itself." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 702–03 (S.D. Tex. Sept. 26, 2025) (collecting cases). Despite this split in authority, there at least appears to be a consensus that deliberately releasing and re-detaining a petitioner to merely start a new six-month clock under *Zadvydas* would be "improper" and perhaps construed as attempting to "evade judicial review." *Tran*, 2026 WL 672969, at *5; *see Villanueva*, 801 F. Supp. 3d at 703 (describing this strategy as "gamesmanship"); *Le*, 2026 WL 809308, at *7 (describing this strategy as "problematic"). The Court does not find such circumstances exist here.

Regardless of his previous detention, the Court finds that Petitioner has shown there is no significant likelihood of removal in the reasonably foreseeable future based on his current detention period. Because Petitioner has now been detained for 16 months, what counts as the "reasonably foreseeable future" has narrowed. *Zadvydas*, 533 U.S. at 701. Since being detained 16 months ago, Petitioner argues there is no evidence that Hong Kong has changed its position as to whether it will accept him. [1] at 9. Petitioner explains that "ICE has not produced any communication from Hong Kong indicating willingness to accept" him and that "ICE has not issued any travel documents." *Id.* As such, based on his assertions and his current period of detention, Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Respondent may rebut this showing but must provide sufficient evidence to do so. Respondent does not do so. Respondent filed a response to the petition on January 5, 2026, stating that "ICE is currently working to remove [Petitioner] and is awaiting a response from Hong Kong as to travel documents to effect [Petitioner's] removal." [7] at 3. His removal was described as "imminent." *Id.* at 1, 4. According to the Declaration submitted with the response, ERO first submitted a travel

document packet to Hong Kong on May 26, 2025, requesting a passport or other suitable travel document for Petitioner. [7-1] at 2. Respondent has submitted two supplemental Declarations since filing the response.[3] [12-1]; [14-1]. In the most recent Declaration submitted on June 30, 2026, it says that ERO Headquarters noted the travel document request was resubmitted to the People's Republic of China's embassy for submission to Hong Kong immigration officials on April 20, 2026. [14-1] at 2. It also says that "[t]he cause of resubmission is unknown." *Id.* Respondent inquired further about the resubmission, but ERO provided no additional information. [15] at 1–2. In addition, ERO has requested several updates on Petitioner's travel document, but there is no indication any responses have been received from Hong Kong.

Based on these Declarations, Respondent has provided only evidence showing a one-way conversation with Hong Kong. This is insufficient. *See Trejo*, 807 F. Supp. 3d at 706–07 ("Respondents do not allege or provide any evidence that any of the three countries even acknowledged receipt of ICE's request, much less that they asked for supplemental information or documentation, or provided any timeline for their decision."). Considering the evidence provided by Respondent, the likelihood that Petitioner will be removed to Hong Kong has changed very little, if any, since he was detained 16 months ago.[4]

The Court compares the circumstances here to those in *Sharifi v. Gillis*, No. 5:20-CV-5-DCB-MTP, 2020 WL 7379211 (S.D. Miss. Oct. 9, 2020), *report and recommendations adopted by* 2020 WL 7364984 (S.D. Miss. Dec. 15, 2020). Like *Sharifi*, Petitioner's removal is not likely in the

---

[3] In the initial Declaration and first supplemental Declaration, it states that the Great Britain consulate was contacted to inquire as to the Petitioner's British Nationality and that the consulate contacted ERO with instructions on how to confirm Petitioner is a British national. [7-1] at 2; [12-1] at 2. It appears this course of action was abandoned because there is no update showing that ERO followed through with these instructions to confirm whether Petitioner is a British national. [15] at 2.

[4] In addition, there is no evidence of any efforts to remove Petitioner during the more than four years he was out on the order of supervision. [15] at 2.

reasonably foreseeable future because the record shows Hong Kong has provided no indication that it will accept Petitioner.  Again, Hong Kong apparently refused to accept Petitioner in 2021 during his previous detention.  And since being re-detained on March 12, 2025, there is no indication Hong Kong's position has changed since that time.  In other words, Petitioner is left in a "removable-but-unremovable limbo" because there is no evidence, despite the government's attempts, that Hong Kong will take him.  *Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 347 (2005).

In sum, Petitioner has been detained for 16 months, beyond the presumptively reasonable period, and has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  And in light of Respondent's failure to rebut this showing with sufficient evidence, the undersigned recommends the instant petition be granted.  The Court need not address Petitioner's remaining arguments.[5]

## **RECOMMENDATION**

The undersigned recommends that Petitioner Yuk Chun Kwong's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus be GRANTED.  The undersigned further recommends that the Court order United States Immigration and Customs Enforcement to remove or release Petitioner pending effectuation of his removal subject to the previous order of supervision or another appropriate order of supervision, to be determined by United States Immigration and Customs Enforcement, within 30 days of the Court's order granting the Petition for Writ of Habeas Corpus.

---

[5] Petitioner also asks for an award of attorney's fees but does not cite to a specific provision authorizing such an award in this type of proceeding.  [1] at 14.  The Court notes that, at least under the Equal Access to Justice Act ("EAJA"), the Fifth Circuit has held that "the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (quoting *O'Brien v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005)).

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions, and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the District Court and for which there is no written objection.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED, this the 13th day of July 2026.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE